# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

RAMON ROBINSON, )
)
                Plaintiff, )
)
v. ) No. CIV-04-409-S
)
HASKELL HIGGINS, et. al., )
)
                Defendants.)

### ORDER

Before the court for its consideration is the Defendant Haskell Higgins, Cyndi Hendrix and Melinda Guilfoyle's Motion to Dismiss/Motion for Summary Judgment and Brief in Support filed May, 5, 2005. The court will treat the motion as one for summary judgment since it must consider matters outside of the record. This matter is also before the court on its own motion to consider dismissal of the case as frivolous under 28 U.S.C. Sec. 1915.

Plaintiff filed his complaint in this court on September 14, 2004. Along with his complaint plaintiff filed a Motion to Proceed *In Forma Pauperis*. On October 14, 2004, an order was entered granting plaintiff's request to proceed *in forma pauperis*. On December 23, 2004, a Motion to Stay Proceedings and Request for Order Requesting Special Report was filed. On January 31, 2005, an order was entered staying the proceedings and ordering a special report. On May 5, 2005, a special report was filed with this court. On this same date defendants also filed a motion to dismiss/motion for summary judgment. In this motion, defendants argue plaintiff's First Amendment rights were not violated, plaintiff has failed to affirmatively link

1

defendants to a constitutional violation, defendants are protected by qualified immunity, and defendants are immune from suit for damages in their official capacities under the Eleventh Amendment. On May 16, 2005, plaintiff responded to this motion. He argued that defendants are substantially burdening his ability to practice his religion. He argues their denial to allow him to attend Jumah services at the prison facility is not logically related to any penological interest.

The court has before it for consideration plaintiff's complaint, the defendants' motion to dismiss/motion for summary judgment, plaintiff's response, and a special report prepared by the Oklahoma Department of Corrections ("DOC") at the direction of the court, in accordance with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, appearing *pro se* is an inmate in the custody of the Oklahoma Department of Corrections. Plaintiff is currently incarcerated at J.E.H.C.C. in Hogden, Oklahoma. At all times relevant to his complaint, he was housed at the Howard McLeod Correctional Center in Atoka, Oklahoma. Plaintiff brings this action pursuant to 42 U.S.C. Sec. 1983 for alleged constitutional violations occurring during his incarceration. The defendants are Haskell Higgins, warden, Cyndi Hendrix, deputy warden, and Melinda Guilfoyle, director designee.

In his complaint, plaintiff alleges defendants violated his First Amendment right to practice religion when they did not allow him to abstain from work to attend religious services held on Fridays. Plaintiff also argues in violation of the Religious Land Use Institutionalized Persons Act ("RLUIPA") defendants have substantially burdened the plaintiff's right to freely practice

2

his religion.

The special report filed May 5, 2005, investigated plaintiff's allegations and found no action needed to be taken.

**STANDARDS OF SUMMARY JUDGMENT**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); See also <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986). If this initial burden is satisfied, the nonmoving party then has the burden of coming forward with specific facts showing there is a genuine issue for trial as to elements essential to the nonmoving party's case. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party cannot rest on the mere allegations of the pleadings, but must go beyond the pleadings and "set forth specific facts showing there was a genuine issue for trial as to those dispositive matters for which [it] carries the burden of proof." <u>Applied Genetics v. First Affiliated Securities</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).

"A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Thomas v. IBM</u>, 48 F.3d 478, 486 (10th Cir. 1995) (quoting

Anderson, 477 U.S. at 248). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp, 938 F.2d 1105, 1110 (10th Cir. 1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

## FINDINGS OF FACT

The court finds the facts as follows. Plaintiff was received into Department of Corrections Custody on July 2, 2003. He is serving seven years for Assault with a Dangerous Weapon and five years for Possession of a Controlled Dangerous Substance. Plaintiff was transferred to Howard McLeod Correctional Center on July 22, 2003. Plaintiff was assigned to an offsite work detail at all times relevant to this claim. Plaintiff filed a grievance which was received on June 10, 2004, stating that he wished to be excused from work all day on Fridays to attend Jumah religious services for one hour. On June 17, 2004, plaintiff received a response to his grievance stating that all necessary provisions would be made so that he could observe Jumah on Fridays in accordance with OP-030112 at his work site. On June 18, 2004, plaintiff appealed this response arguing that he should be allowed to miss work on Friday to attend the one hour Jumah service at the prison facility as opposed to praying at the work site; or in the alternative, plaintiff argued he should be allowed to pick up cigarette butts on the prison grounds on Fridays so he could attend Jumah at the prison facility. On June 30, 2004, defendants upheld their decision to allow plaintiff to

4

observe Jumah at the work site because plaintiff failed to substantiate his claim of probable error as grounds for reversal of defendants initial ruling.

On Friday, September 10, 2004, plaintiff received a misconduct for failing to appear at his work site.  He arrived a few hours later and indicated that he was late due to attending Jumah services.  Plaintiff pled guilty to the above referenced misconduct.

The Department of Corrections does not prohibit inmates who work outside of the facility from observing Jumah on Fridays. Because it is not logistically feasible for Department of Corrections to transport inmates working outside of the facility back to the facility for observation of Jumah for one hour in the middle of the work day, arrangements are made at the various work sites to accommodate those inmates wishing to observe Jumah.

**ARGUMENTS AND AUTHORITIES**

I.  First Amendment Claim

It is well settled law "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229, (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822, (1974)). "Incarceration almost always results in a narrowing, not a broadening, of constitutional protections." Fraise v. Terhune, 283 F.3d 506, 515 n. 5 (3d Cir.2002). Although prison walls "do not form a barrier separating prison inmates from the protections of the Constitution," inmates' First Amendment rights "must in some respects be limited in order to accommodate the demands of prison

administration and to serve valid penological objectives." <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987).  Prisoners retain a First Amendment right to practice their religion, but a regulation that infringes an inmate's free exercise of religion will nonetheless survive constitutional challenge if prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest. <u>O'Lone v. the Estate of Shabazz</u>, 483 U.S. 342, 348 (1987) and <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Legitimate penological interests include the security and order of the prison, rehabilitation of the inmates, deterrence of crime within the system, and the costs to such prison systems. <u>O'Lone</u> at 348. To determine the reasonableness of prison actions the court may look to certain factors: (1) Whether the regulation has a logical connection to the penological interest invoked to justify it; (2)Whether the prisoners remain free to participate in other religious activities; (3) Whether accommodating the prisoners' asserted rights would have adverse effects on the institution; (4) Whether ready alternatives that fully accommodate the prisoners's rights could be implemented at de minimis cost to valid penological interest. <u>Turner</u> at 89-91.

First, the court must consider whether the regulation has a logical connection to the penological interest invoked to justify it.  The defendants have stated that it is not logistically possible for them to return a prisoner who works outside of the facility to the facility for a one hour religious service.  The facility which plaintiff was housed at at the time of his complaint housed 610 inmates.  Approximately 164 of these inmates work on sixteen outside/off compound jobs up to 100 miles away from the facility on a daily basis.  Each crew has one supervisor.  Defendants argue that because most of these job details only have one supervisor in order to return one inmate

6

all inmates would have to come back to the prison facility as
well so as not to be left without a supervisor.  It would affect
the order and most likely the security of the prison.  Plaintiff
argues that defendants return to the prison several times during
the day for various things and cannot determine why they cannot
take him back.  However, the court presumes these are scheduled
runs for reasons other than transporting prisoners.  The
defendants have stated  it is not logistically possible to return
plaintiff to the prison facility on Fridays for Jumah.  This is
done in an effort to establish order and security within the
prison.  Thus, the court finds the regulation has a logical
connection to the penological interest invoked to justify it.
O'Lone v. the Estate of Shabazz, 483 U.S. 342, 348 (1987).

Second, the court must consider whether the prisoner remains
free to participate in other religious activities.  The plaintiff
was allowed time and water to perform his Jumah service on
Fridays at his work site.  Further, the plaintiff does not
complain that defendants were interfering with any other of his
religious practices.  Thus, it appears clear that plaintiff is
allowed to practice his religion.

Next, the court must decide whether accommodating the
prisoners' asserted rights would have an adverse effect on the
institution.  It is clear that if the defendants were required to
return plaintiff to the facility on Fridays for Jumah it would be
a burden to the facility.  The one supervisor watching plaintiff
would be forced to accompany plaintiff back to the facility and
more than likely would have to bring all the prisoners on that
work detail back as well. This appears to not only disrupt the
order of the prison, but also to cause a security concern for the
facility.

Finally, the court must evaluate whether ready alternatives that fully accommodate the prisoner's rights could be implemented at de minimis cost to valid penological interest. It is clear that returning plaintiff to the facility would be a tremendous effort and expense for the defendants.

The Constitution requires that inmates be given a "reasonable opportunity" to practice their religion. <u>Pedraza v. Meyer</u>, 919 F.2d 317, 320 (5th Cir.1990). Here it is undisputed the plaintiff was not prohibited from practicing his religion. He was given an opportunity to participate in a Jumah on Friday at his designated work site. He does not argue the defendants interfered with any other religious practices. After evaluating these four factors the court determines prison administrators can establish the regulation as a rational means of furthering a legitimate penological interest. <u>O'Lone v. the Estate of Shabazz</u>, 483 U.S. 342, 348 (1987). Accordingly, defendants' did not violate plaintiff's First Amendment right to religion. Defendants' motion for summary judgment on this issue is hereby granted.

## II. Religious Land Use Institutionalized Persons Act ("RLUIPA")

The plaintiff also brings a cause of action pursuant to the Religious Land Use Institutionalized Persons Act. Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on

the government's permission and accommodation for exercise of their religion. But the Act does not elevate accommodation of religious observances over an institution's need to maintain order and safety. An accommodation must be measured so that it does not override other significant interests. Cutter v. Wilkinson, 125 S.Ct. 2113 (2005).

Under RLUIPA, plaintiff bears the initial burden of going forward with evidence to demonstrate a prima facie claim that the prison policy constitutes a substantial burden on the exercise of his religious beliefs. 42 U.S.C. § 2000cc- 2(b). Section 2000cc-2 provides :

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion. 42 U.S.C. § 2000cc-2(b).

If plaintiff establishes the existence of such a substantial burden, on which he bears the burden of persuasion, the defendants shall bear the burden of persuasion to prove that any substantial burden on plaintiff's exercise of his religious beliefs is both "in furtherance of a compelling governmental interest" and the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b). By its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs. 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and

the Constitution."). Warsoldier v. Woodford, 418 F.3d 989, 995 (9TH Cir. 2005).

The plaintiff bears the burden of establishing the defendants substantially burdened his right to practice his religion. He argues they substantially burdened his right to practice his religion when they denied him the right to participate in a group Jumah. It is undisputed he has the right to practice a Jumah at the work site on Fridays. While the plaintiff has not been given the opportunity to participate in the group Jumah held at the prison facility he has not established why it is necessary to the successful practice of his religion to attend the Jumah at the prison facility versus conducting one at the work site. In his response, he recites the requirements of participating in a Jumah and why it is important to participate in Jumah, however, he fails to state why it is integral to the practice of his religion to participate in a group Jumah. Without this integral link it is hard for this court to find that the defendants have substantially burden plaintiff's right to practice his religion. See Orafan v. Goord, 411 F.Supp.2d 153, 159 (N.D.N.Y. 2006)( Plaintiffs' evidence establishes that Jumah is not even obligatory unless there are seven participants. Considering that Plaintiffs have not shown that a valid Jumah can even be formed at any of Plaintiffs' facilities, the Court cannot conclude that the failure to provide a separate service constitutes a substantial burden.) Accordingly, defendants' motion for summary judgment regarding plaintiff's claim under RLUIPA is hereby granted.

This court authorized the commencement of this action *in forma pauperis* under the authority of 28 U.S.C. Sec. 1915. Subsection (e) of that statute permits the dismissal of a case

when the court is satisfied that the complaint is without merit in that it lacks an arguable basis either in law or fact. <u>Nietzke v. Williams</u>, 490 U.S. 319 (1989) and <u>Yellen v. Cooper</u>, 828 F.2d 1471, 1475 (10th Cir. 1987).  Accordingly, defendants' motion for summary judgment is hereby **GRANTED** and this case is hereby **DISMISSED** as being frivolous.

    **IT IS SO ORDERED** this 20th day of March, 2006.